Dear Mayor Roach:
Your request for an opinion regarding the North Lake Charles Economic Development District has been forwarded to me for response. In your request, you seek an opinion on three issues:
 • "Is it mandatory or permissive for the members of the Lake Charles governing authority who represent the North Lake Charles Economic Development District to appoint members to the district?"
 • "What is the appropriate procedure for the removal of members of the North Lake Charles Economic Development District by the members of the Lake Charles governing authority who represent the district?"
 • "What constitutes `good cause' for removal of a member of the North Lake Charles Economic Development District?"
As you have outlined in your opinion request, the North Lake Charles Economic Development District (District) is established in LSA-R.S.33:130.551, et seq. "The district is established for the primary purpose of promoting, encouraging, and participating in infrastructure improvements to stimulate the economy through commerce, industry, and research and for the utilization and development of natural, physical, and human resources of the area by providing job opportunities."LSA-R.S. 33:130.551.
The Board of Commissioners of the District is comprised of eleven members plus ex officio (voting) members consisting of each member of the state legislature whose legislative district includes any part of the District. LSA-R.S. 33:130.552. This statute requires various individuals or organizations to appoint members of the District's Board of Commissioners.
In response to your first request, LSA-R.S. 33:130.552(A)(1)(e) reads: "The member or members of the Lake Charles governing authority who represent the district shall appoint one member." (Emphasis added).
LSA-R.S. 1:3 states: "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. The word "shall" is mandatory and the word "may" is permissive." (Emphasis added).
It is mandatory that the member or members of the Lake Charles governing authority appoint a member to the District.
In your second request, you ask the appropriate procedure for the Lake Charles governing authority (who appointed the member of the Board of Commissioners for the District) to remove that member.
Again, LSA-R.S. 33:130.552 is the controlling statute. Section (A)(1)(a)through (j) names the different entities with the authority to appoint a member of the Board of Commissioners for the District. Section (A)(2)
provides for terms of office of two, three, or four years for the members, as determined by lot. Section (A)(3) provides that vacancies on the board "[shall] be filled in the same manner as the original appointment for the remainder of any unexpired term." Section (B)
provides that "Members shall be compensated and may be removed for good cause in accordance with the bylaws of the district." The last section,Section (C), requires: the selection of officers of the board, that meetings be held, a quorum be required, "[all] as provided in the bylaws of the district."
The statute provides for a specified term of office (to be determined by lot) and the removal of a member with good cause in accordance with the bylaws of the district. Once the member is appointed for the term of office, the member can only be removed in accordance with the bylaws of the District. There is no statutory authority, contained in LSA-R.S.33:130.552, for the Lake Charles governing authority to remove the member that it has appointed to the Board of Commissioners for the District before the expiration of the term.
The Louisiana Constitution provides that even the Governor cannot remove a person he has appointed for a term: "Removal Power. The governor may remove from office a person he appoints, except a person appointed for a term fixed by this constitution or by law." La. Const. Art. IV, Sect.5(I).
In your last request, you ask what constitutes "good cause" for removal of a member of the District. The Louisiana Constitution provides for the removal of a "public officer" for conviction of a felony, malfeasance, or gross misconduct while in office. I have enclosed three prior Attorney General's Opinions (Opinion No. 2000-263; 98-20; and 97-0351) which discuss removal of public officers.
In the present case, the removal of a member of the Board of Commissioners on grounds other than conviction of a felony, malfeasance, or gross misconduct must be carried out "[in] accordance with the bylaws of the district." LSA-R.S. 33:130.552(B). The statute leaves it up to the Board to determine what constitutes "good cause" for removal.
If we can be of further assistance, please do not hesitate to call.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _______________________________ THOMAS L. ENRIGHT, JR. ASSISTANT ATTORNEY GENERAL
TLE/dsc
OPINION NUMBER 97-0351
DECEMBER 8, 1997
61 LAWS — General 77 OFFICERS — Local Municipal; Selection, Qualifications Tenure; Vacancies
Examines those instances in which a vacancy is created in the office of board of commissioner of the Sabine River Authority.
Honorable James David Cain Louisiana State Senator Post Office Box 94183 Baton Rouge, LA 70804
Dear Senator Cain:
We are in receipt of your request for an Attorney General's Opinion regarding the Board of Commissioners of the Sabine River Authority. You seek our opinion as to the definition of the phrase "or otherwise" as provided with regard to vacancies in L.A.-R.S. 38:2322 (A)(2). You question whether this phrase means that a governor can cause a vacancy for any reason, such as failing to resubmit an existing member for Senate confirmation, or appointing another qualified person in place of an existing board member, or whether a vacancy can occur with good cause, such as malfeasance in office.
L.A.-R.S. 38:2322 (A) provides in pertinent part:
 A. (1) The governing authority of the Sabine River Authority shall be vested in a board of commissioners thereof, which is hereby provided for. The board shall be composed of thirteen members, who shall be appointed by the governor, one of whom shall serve as chairman . . .
 (2) Each member of the board appointed by the governor shall serve a term concurrent with that of the governor making the appointment. The governor shall fill any vacancy among the appointed members of the board when such vacancy occurs by reason of death, resignation, or otherwise, for the remainder of the unexpired term. Each appointment by the governor shall be submitted to the Senate for confirmation, and beginning in 1984 every appointment confirmed by the Senate shall again be submitted by the governor to the Senate for confirmation every two years after the initial confirmation (Emphasis added)
"Public office" is defined in R.S. 42:1, and includes any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state, and defines "public officer" as any person holding a public office in this state. The office of member of the board of commissioners of the Sabine River Authority is established by law, R.S. 38:2322, and a board member is considered a public officer in the executive branch of state government. (R.S. 42:1; L.A.-Const. Art. IV, §§ 1, 5 (1974)).
In addressing your specific question, we refer to the basic tenants of the Louisiana Civil Code. Article 11 states, "The words of a law must be given their generally prevailing meaning" Article 12 states, "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." Article 13 states, "Laws on the same subject matter must be interpreted in reference to each other."
Examining the phrase "or otherwise" in R.S. 38:2322, we are of the opinion that the general meaning of the phrase is that instance when a vacancy occurs in the office, other than in the case of death or resignation. We then turn to the constitution and laws of this state to determine in what other instances a vacancy occurs, other than death and resignation.
The Louisiana Constitution specifically provides for the removal of appointed board members, which would create a vacancy in office, as follows:
 § 5. Governor; Powers and Duties
 * * *
 (I) Removal Power. The governor may remove from office a person he appoints, except a person appointed for a term fixed by this constitution or by law.
 * * *
(L.A.-Const. Art. IV, § 5 (I)(1974))
This constitutional article grants discretionary power to the governor to remove a person he appoints from office, with the exception of a person appointed for a fixed term. L.A-R.S. 38:2322 sets a fixed term for members of the board of commissioners of the Sabine River Authority as "concurrent with that of the governor making the appointment." Therefore, in accordance with the Louisiana Constitution, a person appointed to the board of commissioners of the Sabine River Authority serves a concurrent term with the appointing governor and is excluded
during his term of office from the removal power granted in article TV, section 5 (I). Therefore, the governor in this instance does not have an absolute and unqualified right to remove a board member during the member's term of office, or place another qualified person in place of an existing board member who has been confirmed by the Senate.*
The only other authority of removal of a public officer is removal by suit, as granted by the constitution, Article X, §§ 24 and 25 (1974). L.A.-Const. Art. X, § 25 provides:
 § 25. Removal by Suit; Officials Subject
 Section 25. For the causes enumerated in Paragraph (A) of Section 24 of this Article, the legislature shall provide by general law for the removal by suit of any state, district, parochial, ward, or municipal official except the governor, lieutenant governor, and judges of the courts of record.
Those causes enumerated in Paragraph (A) of Section 24 of Article X are (1) commission or conviction during a term of office of a felony, or (2) malfeasance or gross misconduct while in office. Although the constitution in Article X, § 25 mandates that the legislature provide by general law for the removal by suit of public officers for these enumerated reasons, the legislature has only provided by general law for removal by suit in the case of a felony conviction (LSA-R.S. 42:1411 and 1412). With regard to malfeasance or gross misconduct in office, general law provides for a criminal penalty; however, a public officer would be liable for impeachment as provided for by the constitution, Article X, § 24, for malfeasance or gross misconduct in office. In both of these instances, a vacancy would be created when a public officer was removed from office by suit for a felony conviction and/or impeached for malfeasance or gross misconduct in office.
Next, we look to the general law for other instances in which a vacancy in this particular office would be created. The statute, R.S. 38.2322, as amended by Louisiana Acts 1980, No. 723, provides for the initial appointment to be confirmed by the Senate and for re-submittal of each appointment every two years after the initial confirmation. This statute is in conflict with the 1974 Louisiana Constitution, as Art. IV, § 5 (H) of the Constitution provides for a governor's appointee to be subject only to an initial confirmation. Additionally LSA-R.S. 24:14, added by Louisiana Acts 1993, No. 1021, provides only for an initial confirmation by the Senate, and not re-submittal of appointments thereafter. In sum, these two provisions of law, R.S. 38:2322 and R.S. 24:14 contradict each other as to whether an appointee is subject only to an initial appointment or re-submittal thereafter, and R.S. 38:2322 also contradicts with the Louisiana Constitution. LSA-Const. Art. IV, § 5 (H) (1974). Therefore, it is our opinion that the latest expression of legislative will controls, whereas, according to R.S. 24:14, only the initial appointment of a member of the board of commissioners of the Sabine River Authority is subject to Senate confirmation. and a vacancy would not be created by failure to re-submit said appointee.
Other general law includes R.S. 42:71, which provides that a person who assumes or pretends to be a public officer without the authority of a commission from the governor is considered a usurper. A quo warranto action may be filed against a usurper, resulting in a judgment forbidding the usurper from holding or claiming the office without authority and declaring who is entitled to the office, which can create a vacancy in office (LSA-C.C.P. art. 3901—3902).
Last, we reference the general definition of the term "vacancy" as provided in the Louisiana Election Code, but only as a guideline, as such definition is provided for an elected office and not an appointed one. LSA-R.S. 18:581 provides:
 As used in this Title:
 (1) A `vacancy' occurs in an elective office when the office is or will be unoccupied by reason of the death of the official who was elected to the office, or by reason of his retirement or resignation, removal from office by any means, failure to take office for any reason, or when it becomes certain that the person elected to the office will not take the office on the day when the term for which he was elected commences, or when the person elected to or holding the office no longer meets the residence or domicile requirements of that office, any declaration of retention of domicile to the contrary notwithstanding.
 * * *
In conclusion, it is our opinion that the governor may fill any vacancy among the appointed members of the board of commissioners of the Sabine River Authority for the remainder of the unexpired term when a vacancy occurs by reason of (1) death, (2) resignation. or (3) as otherwise provided for by law. Those instances which we have identified herein as a possibility of creating a vacancy in the office of member of the board of commissioners of the Sabine River Authority are as follows:
 (1) removal from office by suit for the conviction of a felony;
 (2) removal from office by impeachment for malfeasance or gross misconduct in office;
 (3) removal from office by judgment from a quo warranto proceeding finding person is a usurper;
 (4) failure of the appointee to receive Senate confirmation;
 (5) retirement of the appointee;
 (6) failure of the appointee to take office for any reason, and
 (7) failure of the appointee to continue to meet the qualifications of office.
If we can be of further assistance, please advise.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL:cwr
* See for comparison, Troxler v. Mongrue, 175 So.2d 309 (La.App. 4 Cir. 1965), writ den. 178 So.2d 654, which held that a governor had absolute and unqualified power to remove a commissioner of a water works district, even though the five year term of office had not expired, relying on LSA-R.S. 42:4. LSA-Const. Art. IV, § 5 (I) (1974), in our opinion, supersedes this 1965 case and general law, R.S. 42:4.
OPINION NUMBER 98-20
JANUARY 20, 1998
00 — No Category LSA-R.S. 37:3505
The Board may elect a new chairman only in the event that the chairman's term of office expires, or if the chairman resigns, or if the chairman is removed for cause. Removal must be for cause as the chairman's term is fixed by law.
Ms. Linda F. Magri Louisiana Board of Private Investigator Examiners P.O. Box 640971 Kenner, LA 70064
Dear Ms. Magri:
You advise this office in correspondence of recent date that you were appointed to the Louisiana State Board of Private Investigator Examiners (hereafter the Board) by Governor Mike Foster on August 9, 1996. Shortly thereafter you were elected unanimously and seated as chairman by the Board. Since that time, you have taken a leave of absence from your duties, but state that you intend to resume your duties as chairman during the meeting scheduled for January 21, 1998.
You are concerned that the Board may attempt to elect a new chairman. Note that the Board may not elect a new chairman at any time. In specific reference to this Board, LSA-R.S. 37:3505 provides:
 A. The Board shall:
 * * * * *
 (6) Elect a chairman and a vice chairman, each to serve a term of two years.
The Board may elect a new chairman only in the event that the chairman's term of office expires, or if the chairman resigns, or if the chairman is removed for cause. Removal must be for cause as the chairman's term is fixed by law. The court in Funchess vs. Lindsley, 133 So.2d 357
(La.App. 1st Cir. 1961) so stated:
 Mecham on Public Officers, Section 454, p. 287; Throop, Public Officers, Section 364, p. 359; annotation, Power to remove public officers without notice and hearing, 99 A.L.R. 336; 67 C.J.S., Officers s 61, 255.
 Mecham states the rule as follows:
 In those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed without notice or hearing.
 But on the other hand, where the appointment or election is made for a definite term or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal can not, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised, must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense. (See Funchess, supra, at page 362).
You are entitled to serve the remainder of the two year term to which you were elected as chairman and you would be eligible to be elected for a successive term.
Should you have other questions, please do not hesitate to contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________ KENNETH C. DEJEAN GENERAL COUNSEL
KCD:ams
OPINION NUMBER 00-263
August 21, 2000
15-A — Constitutional Law 16 — CRIMINAL LAW — Crimes Offenses 77 — OFFICERS — Local Municipal; Selection, Qualifications Tenure; Vacancies
Removal action against a public official convicted of a felony in another state would be appropriate where the crime is comparable to a felony under Louisiana laws, and the District Attorney should take action within ten days of the final conviction and/or within a reasonable time thereafter.
Ms. Sanettria R. Glasper Assistant District Attorney Sixth Judicial District 501 East Green Street P.O. Box 1389 Tallulah, Louisiana 71284-1389
Dear Ms. Glasper:
Your request for an Attorney General's Opinion has been forwarded to me for research and reply. Your letter states that a member of the East Carroll Parish School Board was convicted of a felony in the State of Arkansas during his term of office. The additional facts which you have provided our office include the fact that the crime was billed as sexual abuse in the first degree, wherein he pled guilty on April 10, 2000 and did not file an appeal. The appeal period was for thirty days.
You seek our opinion on the following questions:
 (1) Should the District Attorney, pursuant to Louisiana R.S. 42:1411 and R.S. 42:1412, institute a removal action against a public officer convicted of a felony in another state?; and
 (2) Does the failure of the District Attorney to institute the suit within ten days after the conviction is final, in accordance with R.S. 42:1412.A., defeat the removal action?
The Louisiana Constitution provides:
 Section 24.(A) Persons Liable. A state or district official, whether elected or appointed, shall be liable to impeachment for commission or conviction, during his term of office of a felony or for malfeasance or gross misconduct while in such office.
 * * *
LSA-Const. Art. X, § 24 (1974).
The constitution further provides:
 Section 25. For the causes enumerated in Paragraph (A) of Section 24 of this Article, the legislature shall provide by general law for the removal by suit of any state, district, parochial, ward, or municipal official except the governor, lieutenant governor, and judges of the courts of record.
LSA-Const. Art. X, § 25 (1974).
The legislature has provided by general law for the removal of a public officer for the cause of conviction during a term of office of a felony, as follows:
 § 1411. Public officer; ground for removal; suspension; definitions
 A. A public officer shall be removed from office for conviction, during his term of office, of a felony.
 * * *
 G. For the purposes of this Chapter, the term `felony' includes both a felony under the laws of this state and a felony under the laws of the United States. For purposes of this Chapter, the term `public officer' means any person holding a public office, whether state, district, parochial, ward, or municipal, whether the person is elected or appointed except judges of the courts of record.
LSA-R.S. 42:1411.
The method of removal is provided for in R.S. 42:1412, as follows:
 § 1412. Method of removal
 A. For conviction of a felony any public officer shall be removed by judgment of the district court of the district in which he is domiciled. The district attorney of that judicial district shall institute the suit within ten days after the conviction is final and all appellate review of the original trial court proceedings is exhausted.
 * * *
Thus, your first question is whether or not these laws apply to a felony conviction in another state.
Although our research does not reveal a case exactly on point, we believeTucker v. Huval, 374 So.2d 745, is relevant. In this case the court found that the term felony did not include the Federal crime of which the defendant was convicted [fraudulent evasion of Federal Income Taxes] because under Louisiana law, the crime of willful evasion of Louisiana State income taxes was only a misdemeanor. However, at the time Tucker,supra was decided, R.S. 42:1411 did not include a definition of the term felony. Thus, the Court agreed with the defendant that the term felony under the constitution and statutes was restricted to a felony under Louisiana law and did not include felonies under Federal law. SinceTucker, supra, the legislature has defined the term felony. R.S. 42:1411
was amended in 1980 to define the term "felony" to include both a felony under the laws of Louisiana and a felony under the laws of the United States.
A felony under the laws of Louisiana is defined as "[a]ny crime for which an offender may be sentenced to death or imprisonment at hard labor." R.S. 14:2. A felony under federal law is any offense punishable by death or imprisonment for a term exceeding one year. 18 U.S.C. § 1.
The crime for which the public official pled guilty was the crime of sexual abuse in the first degree. Although Louisiana does not have a crime defined as such, the comparable crimes under Louisiana law would be those offenses affecting sexual immorality in Part V., Subpart A of our Criminal Code, specifically R.S. 14:81, Indecent behavior with juveniles, and R.S. 14:81.2, Molestation of a juvenile. Both of these crimes are felonies under Louisiana law, as both may be punishable by imprisonment at hard labor.
At a trial on a public official's removal, R.S. 42:1412 requires that the district attorney need only present proof of the conviction in order to effectuate the removal from office. See, Coker v. Town of Glenmora, 96-1365 (La.App. 3 Cir. 4/2/97), 692 So.2d 679. Thus, we believe that it would be an absurd result to allow a public official who was convicted of a felony in another state, which is comparable to a felony in Louisiana, to continue to serve in public office in violation of the removal provisions of R.S. 42:1411-1412, on the technical argument that the crime was not committed in Louisiana. In sum, it is our opinion that Tucker,supra supports the logical conclusion that if a crime committed elsewhere can be considered a felony under Louisiana law, removal action is appropriate.
In conclusion, it is our opinion that the removal action by the District Attorney is a mandatory duty as long as the public official has been convicted of a felony, as defined by our law, during his term of office. We are cognizant of the fact that our opinion is not binding on a court of law, but we believe that a removal action based upon a felony conviction in another state, which crime is comparable to a felony under Louisiana's law, is an appropriate action by the District Attorney.
In response to your second question, Coker, 692 So.2d at 683-684, states:
 This article [R.S. 42:1411] clearly provides for mandatory suspension by operation of law upon a public official's felony conviction. The suspension lasts until the conviction is final and appellate review is exhausted. [s]ubsection (C), in mandatory terms, provides that the appointed replacement must serve until the conviction is reversed on appeal or the end of the public official's term of office, whichever is first.
 * * *
 La. R.S. 42:1412 provides that, after the automatic suspension ends upon exhaustion of appellate review, the district attorney is required to file suit within ten days for the removal of the public official. This statute obligated the district attorney to file suit for Coker's removal in the ten day period following the supreme court's September 17, 1993 writ denial. The district attorney admittedly did not do so.
 * * *
 It would be an absurd result to allow a convicted public official to return to his duties or to be entitled to the emoluments of his office ten days after the appellate affirmation of his conviction simply because the district attorney missed the ten day deadline for filing the removal suit.
In Coker, supra, the trial court dismissed the district attorney's suit for removal by granting Coker's exception of prescription, as the removal suit was filed more than a year after the felony conviction was final. The district attorney appealed this ruling, but the appeal was subsequently dismissed on the joint motion of the district attorney and Coker. Thus, it does seem possible to defeat a removal action based on the exception of prescription, where suit is not filed until more than one year after the felony conviction is final. Nevertheless, the above comments by the appellate court leads us to believe that even if a removal suit is not filed within the ten days, the public official will not be entitled to return to office.
Since R.S. 42:1412 uses the mandatory word shall, it is our opinion that the District Attorney is mandated to take appropriate action within ten days of the final conviction. However, in specific response to your second question, failure to act within ten days does not in our opinion give the public official grounds to defeat the removal action. Nevertheless, under Coker, supra, a public official may be able to defeat a removal action when suit is not filed within one year of the final conviction.
We hope this opinion addresses all of your questions and concerns herein. If we can be of further assistance, please advise.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ______________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL;mjb